SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES MERCHANT MARINE
ACADEMY ALUMNI ASSOCIATION AND
FOUNDATION, INC.

                                    Plaintiff,

        - against -

JAMES HELIS, in his capacity as Superintendent, United
States Merchant Marine Academy; UNITED STATES
MERCHANT MARINE ACADEMY; DAVID T.
MATSUDA, in his capacity as Administrator, United
States Maritime Administration, RAY LAHOOD, in his
capacity as Secretary, United States Department of
Transportation,

                                    Defendants.
------------------------------------------------------------X

CV-13 2570

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 29 2013   ★
5-1-13 LL

LONG ISLAND OFFICE

Civ. Action No.: CV13-

BIANCO, J.

TOMLINSON, M

## VERIFIED COMPLAINT SEEKING DECLARATORY, MANDAMUS AND INJUNCTIVE RELIEF AND JUDICIAL REVIEW UNDER THE ADMINISTRATIVE PROCEDURE ACT

        Plaintiffs, United States Merchant Marine Academy Alumni Association and Foundation,

Inc., ("Foundation") by and through their attorneys, Schneider Mitola LLP, for their complaint

against Defendants Rear Admiral James Helis, ("Helis") in his capacity as Superintendent, United

States Merchant Marine Academy ("Academy"); the Academy; David T. Matsuda, ("Matsuda") in

his capacity as Administrator, United States Maritime Administration ("MARAD"), Ray LaHood,

("LaHood") in his capacity as Secretary, United States Department of Transportation ("DOT"),

hereby allege and state as follows:

### NATURE OF ACTION

        1.      The Foundation has operated its offices at the Academy pursuant to an agreement and

1

understanding that the Foundation's use of office space on the Academy's campus property at no cost was in the Federal Government's interests as a result of the inherent benefits that the Academy received from the Foundation and based upon the further agreement that the Foundation would remain the principal fund-raising agency for the Academy and the sole alumni affairs organization for its graduates and other supporters.

2.     The Foundation provides relationships, mentoring, and liaison services in addition to the fund raising activities that it does every day for the midshipmen and the Academy on Academy's campus.

3.     Responsible officials at the United States Maritime Administration ("MARAD") were so sensitive to the importance of the relationship of the Academy and the Foundation that they put a legal opinion in writing that the Foundation not only must be located on the campus of the Academy, but that the Foundation belongs there <u>rent free </u>("Opinion").

4.     The Opinion provides:

(a)     the Foundation's predecessor-in-interest ("Fund") provides a "useful" and "beneficial" purpose to the United States;

(b)     permitting the Foundation's use of Federal office space "is consistent the Departmental guidelines";

©     the nature of the Foundation's operations requires that the Foundation remain in "close contact" with Academy officials and be accessible to the Academy student body and Academy alumni visiting the campus;

(d)     no commercial realty is convenient to the Academy to satisfy its needs served by having the Foundation on campus;

2

(e)     the presence of the Foundation is "consistent with Departmental programs and the public interest";

(f)     the purpose of the Foundation is "to promote" a Department program, i.e, the Academy;

(g)     the costs of permitting the Foundation to utilize Academy office space is "insignificant" compared to the benefits received by the Academy due to the presence of the Foundation on campus;

(h)     the presence of an alumni presence on campus is a reality at many if not all United States service academies and public and private universities;

(I)     "no user charges" for rent need to be assessed to the Foundation for use of the on-campus Academy office space due to the non-profit purpose of the Foundation which is to "support a Federal educational institution that is an important part of the program to develop and maintain a strong United States Merchant Marine"; and

(j)     "facilitation of the [Foundation's] role is in the Federal interest but the collection of fees would not be".

5.      In 2004, the relationship between the Academy and the Foundation was further cemented by an agreement put forth by the Academy that: (1) the Foundation is the sole representative of the alumni and the primary fund-raiser for the Academy and (2) the Academy and the Foundation would fully cooperate with one another for the benefit of the Academy and its midshipmen, and to assist each other in fulfilling their respective purposes ("2004 Agreement").

6.      In a shocking reversal of over fifty (50) years of history between the Foundation and the Academy, on November 30, 2012, (a mere four months into his new position) Helis asserted that

3

the Foundation needed to remove itself from the Academy campus on or before June 30, 2013 and attempted to claim that he was "re-affirming" a purported rescission of the 2004 Agreement which was set forth in an unsigned letter from 2008 which never actually terminated the 2004 Agreement.

7.     As of three weeks ago, Helis moved up the improper June 30, 2013 vacate date and sent a mere letter to the Foundation advising that the Foundation is no longer wanted on Academy grounds and if the Foundation does not remove all property off Academy campus by April, 30 2013, it will take self-help measures to secure the premises which the Foundation is presently occupying on the Academy campus located at 300 Steamboat Road, Babson Center located in the Fitch Building, Kings Point, New York 11024 ("Office Space").

8.     No proper notices were sent to terminate the Foundation's possessory interest in the Office Space and the Foundation is not being afforded a hearing.

9.     There is simply nowhere presently for the Foundation to go to in order to operate and the Foundation needs more time if it is ultimately required to vacate the Office Space.

10.     The Foundation has attempted to work out a solution with Helis; has attempted to obtain help from Congress to help mediate the dispute and to afford it time to find new space or to negotiate a reasonable amount of money to pay the Academy in the interim.

11.     All reasonable attempts to amicably resolve the dispute have been rebuffed by Helis and, in fact, Helis has refused to aid the Foundation in procuring new space whatsoever (on or off campus).

12.     As of April 25, 2013, Helis has issued a public announcement that its prior offer to the Foundation to stay on campus in consideration of the Foundation paying almost two million dollars a year in rent to the Academy (which was obviously rejected as it is a large percentage of

4

what the Foundation raises in donations per year) was a mistake and that the actual rent requested

by Helis was less than one tenth (1/10th) of the same, yet the Academy is still not willing to further

negotiate or extend the Foundation's time to vacate or negotiate a reasonable solution.

13.     This proceeding is necessary to protect the Foundation's legal rights which are

presently being trampled on for no good reason and to the detriment of the Academy - a United

States service agency which the Foundation is sworn to assist and support pursuant to its governing

documents.

14.     Instead of attempting to work out these issues, it appears that Helis is more interested

in spending tax payer dollars to enter a legal battle with the Foundation, which has no benefit to the

Academy inasmuch as the Foundation is simply seeking time to come up with a solution to its office

space needs so it can further support the Academy.

15.     As such, the Foundation must seek Court intervention not only to protect the rights

of the Foundation but also to those midshipmen; alumni and others who rely on the help and support

of the Foundation on a daily basis and whom the Foundation is sworn to provide assistance to in

furtherance of the best interests of the United States Merchant Marine.

16.     This action seeks:

(a)     to have Helis's April 8, 2013 final determination to eject and/or evict the Foundation

        from the Office Space without statutory basis or due process reviewed and reversed

        under the Administrative Procedure Act;

(b)     injunctive relief enjoining and restraining the Defendants from taking any steps to

        eject and/or evict the Plaintiff from the Office Space without due process;

©       injunctive relief enjoining and restraining the Defendants from engaging in self-help

5

by locking Plaintiff, its leadership and employees out of the Office Space and prohibiting Plaintiff's continued use of the Office Space and/or forcefully removing the Plaintiff's property; leadership and employees from the Office Space without proper notice; a hearing and such other required legal proceedings;

(d)     injunctive relief enjoining and restraining the Academy from breaching the 2004 Agreement and from terminating or rescinding same without adherence to the Federal statutes and regulations pertaining to governmental contracts, including, but not limited to, the Subpart 16.702; 49.102; 49.105; 50.101-1 of the Federal Acquisition Regulations ("FAR") and 48 CFR 52.249-5 and 48 CFR 52.249-6;

(e)     declaratory relief in the form of a judgment declaring that the Plaintiff is permitted to continue to occupy the Office Space or similar space on the Academy campus in the manner that it has for the past fifty (50) years  or if it is determined that Defendants have the discretion to eject and/or evict the Plaintiff from the Office Space, the Plaintiff cannot be ejected and/or evicted or prohibited from the Office Space without a new opinion from MARAD; proper notice; a hearing and such other required legal proceedings according to New York State Law;

(f)     declaratory relief in the form of a judgment declaring that the 2004 Agreement has not been duly terminated and is full force and effect and that the Academy is currently violating the 2004 Agreement and has failed to adhere to relevant statutes and governmental regulations pertaining to governmental contracts, including, but not limited to 48 C.F.R.16.702; 35.015; 49.102; 49.105; 50.101-1; 52.249-5 and 52.249-6;

6

(g)     mandamus relief in the form of: (1) requiring the Defendants to permit the Plaintiff

to retain office space at the Academy without cost as set forth in the Opinion; (2) if

Helis intends on ejecting and/or evicting the Plaintiff or requires the Plaintiff to pay

rent, requiring Helis to follow protocol and obtain an opinion from MARAD that it

is not in the Federal interest to permit the Foundation to utilize office space at the

Academy as it has for over the last fifty (50) years; (3) requiring that Helis adhere to

relevant statues concerning governmental contracts as it pertains to the 2004

Agreement and (4) that Defendants adhere to relevant New York State Law

pertaining to any attempt to eject and/or evict the Plaintiff from the Office Space; and

(h)     for such other and further relief as to this Court seems just, equitable and proper.

## PARTIES, JURISDICTION AND VENUE

17.     The Foundation is a nonprofit organization incorporated under the laws of the State

of New York and is considered an affiliated entity of the Academy according to the United Stated

States Governmental Accountability Office ("GAO") .

18.     The Foundation's principal place of business is 300 Steamboat Road, Babson Center

located in the Fitch Building, Kings Point, New York 11204 in Nassau County, New York.

19.     The Academy is a United State service academy charged with training officers for

*inter alia*, the United States Merchant Marine and which is funded by DOT and is administered by

MARAD.

20.     The Academy has a principal address of 300 Steamboat Road, Kings Point, New York

11204.

21.     Helis is the Superintendent of the Academy.

22.     MARAD is an administration within DOT and administers financial programs to develop, promote, and operate the U.S. Maritime Service and the United States Merchant Marine.

23.     Matsuda is the Administrator of MARAD.

24 .     DOT is a Federal Cabinet Department of the United States government concerned with transportation, including, but not limited to, maritime transportation.

25.     LaHood is the Secretary of DOT.

26.     MARAD and DOT both have an address of 1200 New Jersey Avenue, SE Washington, DC 20590.

27.     The Academy, DOT and MARAD are agencies of the United States Government.

28.     This Court has jurisdiction over this action pursuant to 5 U.S.C. §702 et seq. (Review of actions by administrative agencies), 28 U.S.C. §1331 (federal question), 28 U.S.C. §1346 (United States as defendant), and 28 U.S.C. §1361 (Mandamus to compel an officer or employee of the Unites States or any agency thereof to perform a duty owed to plaintiff).

29. The relief requested is specifically authorized pursuant to 28 U.S.C. §1361 (Mandamus), 28 U.S.C. §2201 (Declaratory Relief) and 28 U.S.C. §2202 (Injunctive Relief).

30.     Venue is proper pursuant to 28 U.S.C. §1391(e) because Plaintiff and some of the Defendants operate in this District and a substantial part of the events and omissions which give rise to this action occurred in this District.

31.     Plaintiff meet all requirements for "standing" in that they present a justiciable case or controversy and it will certainly suffer immediate irreparable, harm if the relief they seek is not timely granted by this Court inasmuch as Helis is seeking to eject and/or evict the Foundation from the Academy property on April 30, 2013 by utilizing self-help measures without due process and in

8

violation of Academy protocol and relevant statutes and/or regulations pertaining to the purpose of the Academy and governmental contracts.

## SUBSTANTIVE ALLEGATIONS

32.    Since 1957, the Foundation has operated its offices at the Academy for free without a written lease.

33.    The Opinion supports this arrangement.

34.    The Foundation provides relationships, mentoring, and liaison services in addition to the fund raising activities that it does every day for the midshipmen and the Academy on Academy's campus.

35.    The Foundation exists to serve, assist and perpetuate the Academy, its regiment of midshipmen, faculty, staff, and alumni.

36.    The Foundation supports the Academy's mission of educating and graduating Merchant Marine officers who will become leaders in the commercial and defense transportation services of the United States.

37.    The Foundation provides financial support for charitable, scientific and educational purposes by raising and distributing funds, some of which will be maintained in an endowment designed to provide continuous income assistance to the Academy.

38.    The Foundation also fosters and encourages the development of the Academy to meet the future transportation needs of the United States, and shall enhance the prestige thereof by acquisition, preservation, and dissemination of information pertaining to their history, activities, methods and objectives.

39.    The Academy operates on United States Governmental land which is located in Kings

9

Point, New York with an address of 300 Steamboat Road Kings Point, New York 11024.

40.     The Academy operates as part of the United States Department of Transportation ("DOT") and is administered by the MARAD.

41.     The purpose of DOT is to: (1) ensure the coordinated and effective administration of the transportation programs of the United States Government; (2) make easier the development and improvement of coordinated transportation service to be provided by private enterprise to the greatest extent feasible; (3) encourage cooperation of Federal, State, and local governments, carriers, labor, and other interested persons to achieve transportation objectives; (4) stimulate technological advances in transportation, through research and development or otherwise; (5) provide general leadership in identifying and solving transportation problems; and (6) develop and recommend to the President and Congress transportation policies and programs to achieve transportation objectives considering the needs of the public, users, carriers, industry, labor, and national defense.

42.     MARAD is an administration within DOT and the mission of the MARAD is to foster, promote, and develop the merchant maritime industry of the United States.

43.     The Academy's primary statutory purpose is to be an institution of higher education to provide instruction to individuals to prepare them for service in the merchant marine of the United States, to conduct research with respect to maritime-related matters, and to provide such other appropriate academic support, assistance, training, and activities.

44.     The Foundation has been documented as an "affiliated" entity of the Academy in various documents promulgated by the United Stated States Governmental Accountability Office ("GAO") and has operated on the campus of the Academy since 1957 at the insistence of the Academy.

10

45.     The Foundation offices in the Babson Center located in the Fitch Building on the Academy campus, a central location for alumni, midshipmen, visitors, faculty, and staff.

46.     Every year, the Foundation works closely with Congress to ensure the Academy's budget is adequate for the school's needs.

47.     The Foundation raises millions of dollars that the Academy needs in addition to appropriated funds from Congress to remain viable. Over just the past ten (10) years, the Foundation has raised over $22 million dollars (an average of a little over 2 million dollars a year).

48.     The Foundation provides support to the athletic teams, clubs, Band, and sailors – the Foundation is the place that midshipmen go to for support, the place that alumni go to network with the Academy, industry, employers and classmates. It is also the place that Congress connects with as they support the Academy's mission.

49.     The Academy, by providing the Foundation with on-site offices on the Academy campus, enables the Foundation to provide as much assistance as possible.

50.     On April 8, 2013,  Helis sent a mere letter to the Foundation advising that the Foundation is no longer wanted on Academy grounds and if the Foundation does not remove all property off Academy campus by April, 30 2013, it will take self-help measures to secure the Office Space which the Foundation is presently occupying.

51.     No proper notices were sent to terminate the Foundation's possessory interest in the Office Space and the Foundation is not being afforded a hearing or a further review of the Opinion.

52.     There is simply nowhere presently for the Foundation to go to in order to operate and the Foundation needs more time if it is ultimately required to vacate the Office Space.

53.     Moreover, the Foundation has attempted to work out a solution with Helis; has

attempted to obtain help from Congress to help mediate the dispute and to afford it time to find new space or to negotiate a reasonable amount of money to pay the Academy in the interim.

54.     All reasonable attempts to amicably resolve the dispute have been rebuffed by Helis and, in fact, the Academy has refused to aid the Foundation in procuring new space whatsoever (on or off campus).

55.     As of last week, Helis has issued a public announcement that its prior offer to the Foundation to stay on campus in consideration of the Foundation paying almost two million dollars a year in rent to the Academy (which was obviously rejected as it almost the entire amount of money the Foundation raises in donations per year) was a mistake and that the actual rent requested by Helis was less than one tenth (1/10th) of the same, yet Helis is still not willing to further negotiate or extend the Foundation's time to vacate or negotiate a reasonable solution.

56.     If Helis is not stopped, the Foundation will simply not have any place to operate inasmuch as the space on campus that could be made available, Helis is refusing to allow the Foundation to utilize, and the space off campus that the Foundation is attempting to convert to useable office space and which the Foundation needs the Academy's help to obtain the appropriate municipal approvals for, is not ready for use and cannot be legally accepted at this time; all of which Helis is aware of.

57.     In August of 2004, the Foundation and the Academy entered into an Agreement that the Foundation would "remain the principal fund-raising agency for the Academy and the sole alumni affairs organization for its graduates and other supporters ("2004 Agreement").

58.     The Foundation paid over a million dollars to another fund raising group at the request of the Academy for such right.

59.     Such 2004 Agreement has not been duly terminated or rescinded despite what Helis claims.

60.     On November 30th of last year, just four months into his new job at the Academy, Superintendent Helis handed the Foundation a letter which, amongst other items, declared that he was re-affirming a purported prior "rescinding" of the 2004 Agreement between the Academy and the Foundation.

61.     This was a startling announcement by a new Superintendent against an organization which had deep, positive relationships with the eleven (11) Superintendents of the Academy who preceded him.

62.     Interestingly, it appears that two months prior, a new Alumni Association, unbeknownst to the Foundation, was created by an unknown group.

63.     This entity is known as the United States Merchant Marine Academy Alumni Association, Inc.

64.     Helis has never discussed this entity with the Foundation and it has only recently been discovered to exist.

65.     Further, Helis presented the Foundation with a lease which he personally executed that required the Foundation to vacate the Babson Center located in the Fitch Building by June 30th, 2013  (a date now unilaterally shortened to April 30th, 2013).

66.     Helis claims the lease was drafted with the assistance and approval of MARAD and DOT attorneys.

67.     Among other things, that lease proffered by Helis mandated that Helis had the unilateral "right to terminate this Lease...upon 10 days' notice to Tenant", effectively making it a

13

worthless 10-day lease.

68.    The proposed lease also required that the Foundation pay "the total amount of $29/square foot per month."

69.    Annualized, that equates to rent of $1,785,168.00/yr for the Foundation's small Office Space (close to the entire amount which the Foundation received in donation per year).

70.    After receiving notice from the Foundation's attorneys that the Foundation was intending on filing a lawsuit, such amount was retracted by Helis last week as a mistake, but he is still not willing to negotiate with the Foundation.

71.    The Foundation asked Helis to re-consider and mediate.

72.    Despite the over fifty (50) year history between the Academy and the Foundation, he has not even provided the courtesy of a response.

73.    The Foundation has asked that Helis permit the Foundation to remain at Babson Center located in the Fitch Building until the new Lerner Alumni House (in a private property, but located wholly within the perimeter of the Academy campus), with its planned office space and Academy Visitor's Center, is available for occupancy.

74.    Helis has rejected such proposal.

75.    The Foundation has asked for Helis' support in obtaining zoning variances necessary for this new use of the Lerner Alumni House.

76.    Helis has said "No".

77.    The Foundation asked Helis to obtain a similar legal opinion from MARAD to support Helis' opposing stance regarding the prior Opinion and the Foundation and Helis refused.

78.    When the Foundation asked Helis why he was forcing the Foundation off campus,

14

he stated that the Foundation's offices in Babson Center located in the Fitch Building are needed for academic "swing" space because Samuels Hall which will be under renovation, even though no funding for the renovations was then appropriated and which is not anticipated to commence until late 2014 at the earliest.

79.     Now at the last minute before this litigation is commenced, Helis is asserting that the Academy subsequently received additional appropriated funding for renovations under the continuing resolution for Fiscal Year 2013 approved by Congress last month.

80.     Helis stated this in an announcement last week.

81.     Helis claims that the additional funding allowed the Academy to move up its plans for the Babson Center located in the Fitch Building space - not Samuels Hall.

82.     There is simply no proof that the renovations are planned to start on May 1, 2013 or that the renovations can not be put on hold pending a hearing or resolution to this matter.

83.     Contrary to Helis' statements in his April 25, 2013 announcement, while not understanding the motivation of Helis, but in an effort to compromise, the Foundation offered to pay rent of $5,000 per month and to stay in the Babson Center located in the Fitch Building until it was able to move to the new Lerner Center.

84.     In response, Superintendent Helis refused to entertain the offer; refused to provide comparable rental prices for space at the Academy after the Foundation made appropriate Freedom of Information Act ("FOIA") requests for such information and has further refused further amicable discussions to come up with a solution.

85.     Rather, on April 8, 2013 in response to the Foundations's proposal, Helis moved the June 30, 2013 vacate date up to April 30, 2013 and demanded that the Foundation vacate the

15

premises on that date.

86.     On Saturday, April 20, 2013, the Foundation presented Helis with another signed offer which he refused to even receive, much less read or consider.

87.     On Thursday, April 25, 2013, the Foundation sent Helis a letter requesting to extend that April 30, 2013 vacate date and to request to mediate the parties' issues and there was no response.

88.     Superintendent Helis knows, until the Lerner Center is available, the Foundation has no alternate location to conduct its business.

89.     During a recent meeting with Congressional staff, the Foundation learned that MARAD had told Congress that the Foundation was offered alternate space on-campus at the Academy and that the Foundation refused it.

90.     However, no alternate space was ever offered to the Foundation.

91.     When questioned about this by alumni at the Spring Meeting a number of days ago, Helis denied that he had told Congress or MARAD the foregoing and further refused to offer the Foundation alternate space on-campus, in spite of what Congress was told.

92.     It is believed that if the relevant parties actually knew that the Foundation was not offered alternate space; actually did offer to pay a reasonable rent in the interim (notwithstanding the "Opinion"); the proposed leased purportedly drafted by MARAD and DOT attorneys was seeking rent that almost equated to the total donations that the Foundation receives during the year (which was in error); that the Foundation was being ousted without any further time to prepare the off-site Lerner Center and that there are no immediate plans within the next few weeks to perform the renovations at the various available buildings at the Academy, none of those parties would be

supportive of Helis' decision to oust the Foundation in the manner currently being sought without due process.

93.     That the April 8, 2013 letter setting a unilateral ouster date of April 30, 2013 for the Foundation to vacate the Office Space was a final decision ("Final Decision"); the Academy's refusal to work with the Foundation to resolve the present dispute in good faith represents a violation of the 2004 Agreement and there are no further statutes or regulations that would permit the Foundation to have a further internal administrative review relative to the Academy, MARAD or DOT.

94.     The Final Decision is violative of the established protocol of the Academy to obtain a legal opinion from MARAD prior to modifying its relationship with the Foundation (an affiliated entity) as illustrated in the prior Opinion which permitted the Foundation to possess the Office Space without cost.

95.     The Final Decision has violated the Foundation's due process rights set forth in the 5th and 14th Amendments to the United States Constitution to the extent that such decision was made without proper notice or a hearing and the Foundation is entitled to due process as a matter of law.

96.     The Final Decision is violative of the statutes that govern the Academy, MARAD and DOT as the decision is not in the Federal interest and does not assist the United States Merchant Marine or the Academy and actually causes detriment to the Academy which is violative of Federal statutes describing the purpose of the Academy.

97.     Given that there are no Federal statutes or regulations pertinent to notice and a hearing regarding the ouster set forth in the Final Decision, New York State Law applies.

98.     The Final Decision violates New York State Law pertaining to the possessory interest that the Foundation has in the Office Space and which the Academy is attempting to divest the

17

Foundation from said Office Space.

99.     The 2004 Agreement has not been rescinded and/or terminated and Helis has violated various above-referenced statutes and regulations that exist  as it relates to its claim that the 2004 Agreement is terminated / rescinded / modified.

100.    Upon information and belief, the Academy is in breach of the 2004 Agreement due to its actions / inactions set forth above and it cannot be adequately compensated by monetary damages.

101.    The following is a list of documents that are annexed hereto that are supportive of the facts set forth in this Verified Complaint:

a)      N.Y.S.  Department of State listing of current name of Plaintiff - **Exhibit "A"**;

b)      The Opinion - **Exhibit "B"**;

c)      The 2004 Agreement - **Exhibit "C"**;

d)      The Final Decision - **Exhibit "D"**;

e)      Helis' April 25, 2013 response to the issues raised herein - **Exhibit "E"**;

f)      Relevant portions of the findings of the GAO and description of the Foundation as an "Affiliate" of the Academy -**Exhibit "F"** at p. 52;

g)      Helis' November 30, 2012 letter - **Exhibit "G"**;

h)      N.Y.S. Department of State listing of new alumni association created by unknown group in September of 2012 - **Exhibit "H"**;

I)      Helis' January 24, 2013 letter enclosing a proposed lease - **Exhibit "I"**;

j)      April 25, 2013 letter of Foundation's attorneys asking to mediate - **Exhibit "J"**;

k)      Foundation public statement which encapsulates issues raised in the Complaint -

18

**Exhibit "K"**;

l)    Foundation's attorney letter advising on intent to seek a temporary restraining order on April 29, 2013 - **Exhibit "L"**;

m)    Helis' March 8, 2013 letter refusing to obtain a MARAD legal opinion; refusal to provide documents requested pursuan to FOIA and refusal to provide assistance regarding new office space - **Exhibit "M"**.

## AS AND FOR A FIRST CAUSE OF ACTION FOR RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT

102.    Plaintiff repeats, reiterates and realleges paragraphs "1" through "101" of this Verified Complaint as if more fully set forth at length herein.

103.    The Final Decision and  Helis' refusal to work with the Foundation to resolve the issue with the Office Space is violative of the purposes of the Academy as set forth in 46 USC § 51301; 49 USC § 109(a); the Opinion; Academy protocol and the 2004 Agreement.

104.    The Final Decision and alleged threats to engage in self-help of securing the Office Space after April 30, 2013 violates the Plaintiff's Constitutional rights to due process set forth in the 5th and 14th Amendments to the United States Constitution via appropriate notice and a hearing.

105.    The Final Decision is contrary to constitutional right and privilege of the Foundation; is in excess of statutory authority and is without observance of procedure required by law and as such, is reviewable pursuant to 5 U.S.C.§ 706(2)(a-d).

106.    Based upon the foregoing, the Plaintiff is entitled to an Order that the Final Determination was void and must be set aside.

## AS AND FOR A SECOND CAUSE OF ACTION FOR AN INJUNCTION PURSUANT TO F.R.C.P § 65; 28 U.S.C. §2202; 5 U.S.C. § 705; and 5 U.S.C. § 552

107. Plaintiff repeats, reiterates and realleges paragraphs "1" through "106" of this Verified Complaint as if more fully set forth at length herein.

108. As a result of the above, the Plaintiff is entitled to injunctive relief pursuant to F.R.C.P § 65; 28 U.S.C. §2202; 5 U.S.C. § 705 and 5 U.S.C. § 552 .

109. Based upon the forgoing the Plaintiff is entitled to an permanent injunction (and in the interim, temporary and preliminary relief) enjoining and restraining: (a) the Defendants from taking any steps to eject and/or evict the Plaintiff from the Office Space without proper notice; a hearing and such other required legal proceedings; (b) from engaging in self-help by locking Plaintiff, its leadership and employees out of the Office Space and prohibiting Plaintiff's continued use of the Office Space and/or forcefully removing the Plaintiff's property; leadership and employees from the Office Space without proper notice; a hearing and such other required legal proceedings; © enjoining and restraining the Academy from breaching the 2004 Agreement and from terminating / rescinding / modifying  same without adherence to the Federal statutes and regulations pertaining to governmental contracts, including, but not limited to, 48 C.F.R.16.702; 35.015; 49.102; 49.105; 50.101-1; 52.249-5 and 52.249-6; and (d) enjoining and restraining Helis from failing to provide the documents requested by the Foundation pursuant to FOIA.

## AS AND FOR A THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF PURSUANT TO F.R.C.P § 57 and 28 U.S.C. §2201

110. Plaintiff repeats, reiterates and realleges paragraphs "1" through "109" of this Verified Complaint as if more fully set forth at length herein.

111. Based upon all of the foregoing there exists a justiciable controversy.

112. As such, the Plaintiff seeks a judgment declaring:

(I)    that the Plaintiff is permitted to continue to occupy the Office Space or similar space on the Academy campus in the manner that it has for the past fifty (50) years or if it is determined that Defendants have the discretion to eject and/or evict the Plaintiff from the Office Space, the Plaintiff cannot be ejected and/or evicted or prohibited from the Office Space without a new opinion from MARAD; proper notice; a hearing and such other required legal proceedings according to New York State Law; and

(ii)    the 2004 Agreement has not been duly terminated and is full force and effect and that the Academy is currently violating the 2004 Agreement and has failed to adhere to relevant statutes and governmental regulations pertaining to governmental contracts, including, but not limited to 48 C.F.R.16.702; 35.015; 49.102; 49.105; 50.101-1; 52.249-5 and 52.249-6;

### AS AND FOR A FOURTH CAUSE OF ACTION FOR MANDAMUS RELIEF PURSUANT TO 28 U.S.C. §1361

113.    Plaintiff repeats, reiterates and realleges paragraphs "1" through "112" of this Verified Complaint as if more fully set forth at length herein.

114.    Based upon all of the foregoing, the Plaintiff is entitled to mandamus relief requiring the Defendants in their various capacities to: (1) permit the Plaintiff to retain office space at the Academy without cost as set forth in the Opinion; (2) if Helis intends on ejecting and/or evicting the Plaintiff or requires the Plaintiff to pay rent, requiring Helis to follow protocol and obtain an opinion from MARAD that it is not in the Federal interest to permit the Foundation to utilize office space at the Academy as it has for over the last fifty (50) years; (3) requiring that Helis adhere to

relevant regulations and statues concerning governmental contracts as it pertains to the 2004 Agreement including, but not limited to, 48 C.F.R.16.702; 35.015; 49.102; 49.105; 50.101-1; 52.249-5 and 52.249-6 and (4) that Defendants adhere to relevant New York State Law pertaining to any attempt to eject and/or evict the Plaintiff from the Office Space.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests an Order and Judgment in their favor against the Defendants jointly and/or severally for the following relief:

(a)  to have Helis's April 8, 2013 final determination set aside under the Administrative Procedure Act;

(b)  permanent injunctive relief (and in the interim, temporary and preliminary relief) enjoining and restraining the Defendants from taking any steps to eject and/or evict the Plaintiff from the Office Space without proper notice; a hearing and such other required legal proceedings;

©  permanent injunctive relief (and in the interim, temporary and preliminary relief) enjoining and restraining the Defendants from engaging in self-help by locking Plaintiff, its leadership and employees out of the Office Space and prohibiting Plaintiff's continued use of the Office Space and/or forcefully removing the Plaintiff's property; leadership and employees from the Office Space without proper notice; a hearing and such other required legal proceedings;

(d)  permanent injunctive relief (and in the interim, temporary and preliminary relief) enjoining and restraining the Academy from breaching the 2004 Agreement and from terminating or rescinding same without adherence to the Federal statutes and

22

regulations pertaining to governmental contracts, including, but not limited to, the Subpart 16.702; 49.102; 49.105; 50.101-1 of the Federal Acquisition Regulations ("FAR") and 48 CFR 52.249-5 and 48 CFR 52.249-6;

(e)     enjoining and restraining Helis from failing to refusing to provide the documents requested by the Foundation pursuant to FOIA pursuant to 5 U.S.C. § 552;

(f)     declaratory relief in the form of a judgment declaring that the Plaintiff is permitted to continue to occupy the Office Space or similar space on the Academy campus in the manner that it has for the past fifty (50) years  or if it is determined that Defendants have the discretion to eject and/or evict the Plaintiff from the Office Space, the Plaintiff cannot be ejected and/or evicted or prohibited from the Office Space without a new opinion from MARAD; proper notice; a hearing and such other required legal proceedings according to New York State Law;

(g)     declaratory relief in the form of a judgment declaring that the 2004 Agreement has not been duly terminated and is full force and effect and that the Academy is currently violating the 2004 Agreement and has failed to adhere to relevant statutes and governmental regulations pertaining to governmental contracts, including, but not limited to 48 C.F.R.16.702; 35.015; 49.102; 49.105; 50.101-1; 52.249-5 and 52.249-6;

(h)     mandamus relief in the form of: (1) requiring the Defendants to permit the Plaintiff to retain office space at the Academy without cost as set forth in the Opinion; (2) if Helis intends on ejecting and/or evicting the Plaintiff or requires the Plaintiff to pay rent, requiring Helis to follow protocol and obtain an opinion from MARAD that it

23

is not in the Federal interest to permit the Foundation to utilize office space at the Academy as it has for over the last fifty (50) years; (3) requiring that Helis adhere to relevant regulations and statues concerning governmental contracts as it pertains to the 2004 Agreement, including, but not limited to, 48 C.F.R.16.702; 35.015; 49.102; 49.105; 50.101-1; 52.249-5 and 52.249-6 and (4) that Defendants adhere to relevant New York State Law pertaining to any attempt to eject and/or evict the Plaintiff from the Office Space;

(I)     an Order awarding Plaintiff's attorney's fees and litigation costs in bringing this action pursuant to 5 U.S.C. § 552(a)(4)(E).

(j)     for such other and further relief as to this Court seems just, equitable and proper.

Dated: Garden City, New York
          April 29, 2012

                                        **SCHNEIDER MITOLA, LLP**

                                        By:
                                            Ryan D. Mitola, Esq. (RM-5302)
                                            *Attorneys for Plaintiff*
                                            666 Old Country Road, Suite 412
                                            Garden City, New York 11530
                                            (516) 393-5555

## <u>VERIFICATION</u>

James Tobin declares under penalties of perjury:

I am the President of the  United States Merchant Marine Academy Alumni Association

and Foundation, Inc. have read the foregoing Verified Complaint and the facts stated are true and

correct to the best of my knowledge, information and belief.

_____
James Tobin, President of the United States
Merchant Marine Academy Alumni Association and
Foundation, Inc.


Sworn to before me this
29th  day of April, 2013

_____
Notary Public

**DAN M. BLUMENTHAL**
Notary Public, State of New York
No. 30-5009033
Qualified in Nassau County
Commission Expires March 8, 20 15